# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GARY G. DAY CONSTRUCTION COMPANY, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>CLARENDON AMERICA INSURANCE COMPANY, *et al.*,<br><br>    Defendants. | Case No.: 2:04-cv-01720-RLH-RJJ<br><br>**O R D E R**<br><br>(Motion for Partial Summary Judgment–#80; Motion for Summary Judgment, or alternatively, Partial Summary Judgment–#81; Countermotion for Summary Judgment–#85) |

       Before the Court is Plaintiff Gary G. Day Construction Co.'s **Motion for Partial Summary Judgment** (#80), filed August 31, 2006.  The Court has also considered Defendants Clarendon America Insurance Company ("Clarendon") and North American Risk Services, Inc.'s ("NARS") (collectively "Defendants") Opposition (#86), filed September 14, 2006, and Plaintiff's Reply (#89), filed September 29, 2006.

       Also before the Court is Defendants' **Motion for Summary Judgment, or in the alternative, Partial Summary Judgment** (#81) and attached exhibits (#82), filed August 31, 2006.  The Court has also considered Plaintiff's Opposition (#85), filed September 14, 2006, and attached exhibits (#87), filed September 20, 2006.  To date, no Reply has been filed.

/ /

1   Also before the Court is Plaintiff's **Countermotion for Summary Judgment on**
2   **Plaintiff's Bad Faith Cause of Action** (#85), filed September 14, 2006. To date, no Opposition
3   has been filed.
4   In consideration of the Parties' motions, the Court has also considered the
5   following: **(1)** Defendants' Statement of Undisputed Facts (#83), filed August 31, 2006; **(2)**
6   Plaintiff's Objection to Defendants' Separate Statement of Undisputed Facts (#84), filed
7   September 14, 2006; **(3)** Plaintiff's Concise Statement of Facts Not in Dispute (#88), filed
8   September 21, 2006; and **(4)** CGL Policy #UCLW 1000026 (#91) filed October 11, 2006 in
9   compliance with the Court's Order dated October 6, 2006 (#90).
10  Collectively, the Parties' motions each seek summary judgment on all counts,
11  which include: (1) Declaratory Relief–Duty to Indemnify; (2) Declaratory Relief–Waiver and
12  Estoppel; (3) Breach of Contract; (4) Statutory Relief under Nev. Rev. Stat. § 686A.310; and (5)
13  Breach of Duty of Fair Dealing and Good Faith.

## BACKGROUND

15  Plaintiff Gary Day is a framing contractor who was hired by two companies, Landis
16  Development Company ("Landis") and Dayside Construction ("Dayside"), to perform the rough
17  framing work for a housing development project ("Project") consisting of 92 homes, which Landis
18  and Dayside co-developed between the years of 1996 and 2000. Of the 92 homes, Plaintiff framed
19  a total of 28 homes–17 for developer Landis and 11 for developer Dayside. The Landis homes
20  were framed between the dates of September 6, 1996 and December 31, 1997. The Dayside
21  homes were completed between 1998 and 2000. Plaintiff's framing work included, among other
22  things, the installation of windows.
23  On February 13, 2001, a construction defect complaint was filed against Landis and
24  Dayside in the Eighth Judicial District Court for Clark County, Nevada ("Underlying Action"),
25  wherein Plaintiff was named by Landis as a third-party defendant. The case eventually grew to a
26  class certification involving 53 of the 92 homes within the Project. The pleadings allege framing

AO 72
(Rev. 8/82)

1  related defects toward Plaintiff, a significant portion of which involved alleged water intrusion
2  around windows of the homes framed by the company.  Specifically, deposition testimony
3  revealed that Plaintiff did not caulk the windows during installation.  An expert retained by the
4  plaintiffs in the Underlying Action, Roy Adcock, performed tests on a sampling of the 53 class
5  action homes and found evidence of water intrusion in each home tested.
6          Throughout the Project's development, Plaintiff was insured by various carriers,
7  including Clarendon and Federated American Insurance Company ("Federated").  Between the
8  dates of February 19, 2000, and February 19, 2001, Clarendon insured Plaintiff under a
9  commercial general liability policy ("Policy") which covered, among other things, property
10 damage liability.  During this Policy term, 20 of the 53 homes involved in the class certification
11 ("the 20 homes") closed escrow, noticed completion and were recorded as new home sales.  Prior
12 to this term, Plaintiff was insured by Federated, during which time the other 33 homes closed
13 escrow and were recorded as new home sales.  Federated, through Attorney Kevin Helm ("Helm"),
14 provided a defense to Plaintiff in the Underlying Action under a reservation of rights.
15         By letter dated April 16, 2001, Helm "request[ed] that Clarendon Insurance provide
16 indemnity and a defense to Gary G. Day Construction in [the Underlying Action]."  In response,
17 Clarendon, by and through its independent claims administrator Claims Control Corporation
18 ("CCC"), agreed to investigate the matter under a full reservation of rights.  On February 12, 2002,
19 Defendant NARS notified Plaintiff that it replaced CCC as Clarendon's wholly owned claims unit.
20 Then, in early 2003, NARS hired Dynamic Claims Services ("Dynamic") as its own independent
21 adjuster to investigate and obtain information about the homeowners' claims in the Underlying
22 Action.
23         On March 17, 2003, Dynamic submitted an investigation report and Adcock's
24 preliminary defect list to NARS.  NARS, in turn, requested additional information from Helm.
25 After receiving the information requested, NARS updated Clarendon's May 30, 2001 reservation
26 of rights letter with a second letter dated November 20, 2003.  The November letter outlined

1  relevant Policy language that could limit Plaintiff's available coverage and stated that the
2  investigation into Plaintiff's claim was still continuing.
3  After additional investigation took place, Dynamic reported to NARS that the first
4  instance of damage in homes occurred before the start of Clarendon's Policy period.  Based on this
5  information, Clarendon's coverage counsel, Attorney Kenneth Goates, notified Plaintiff via letter
6  dated April 15, 2004, that Clarendon denied coverage because the facts known to Clarendon do
7  not trigger liability under the Policy.  Clarendon further took the position that its coverage was
8  excess to other applicable policies.
9  Having set forth the background leading up to the current proceedings, the Court
10 now turns to the Parties' present motions.  Additional relevant facts bearing on the Court's
11 decision are discussed throughout the remainder of this Order.

**DISCUSSION**

**I. Summary Judgment Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the non-moving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and draw all inferences in the light most favorable to the non-moving party.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982), *cert. denied*, 460 U.S. 1085 (1983).

Once the moving party satisfies the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for

1  trial." *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The non-
2  moving party "may not rely on denials in the pleadings but must produce specific evidence,
3  through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME*
4  *Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991), and "must do more than simply show that there is
5  some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*
6  *Corp*, 475 U.S. 574, 586 (1986).

   In this case, the Parties have filed cross-motions for summary judgment.  "[T]he mere fact that the parties make cross-motions for summary judgment does not necessarily mean that there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other." *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975) (citations omitted).

**II. Count One: Declaratory Relief–Duty to Indemnify**

   Count One of Plaintiff's Amended Complaint seeks declaratory judgment of Clarendon's duty to indemnify under the Policy.  To determine Clarendon's duty, if any, to indemnify Plaintiff, the Court must review and interpret the Policy language.  This case is filed under diversity jurisdiction; both the Parties and the Court agree that Nevada substantive law applies.  *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938).

   **1. Interpretation of Insurance Contracts, Generally**

   Nevada law is guided by well-settled principles of insurance contract interpretation.  The interpretation of an insurance contract is a question of law.  *Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003).  Coverages are to be construed broadly, while limitations and exclusions are to be construed narrowly.  *Cranmore v. Unumprovident Corp.*, 430 F.Supp.2d 1143, 1149 (D. Nev. 2006) (interpreting Nevada law).  Policies are construed from the perspective of a layman rather than from "one trained in the law" and absent ambiguity, terms are to be given their plain and ordinary meaning.  *McDaniel v. Sierra Health and Life Ins. Co., Inc.*, 53 P.3d 904, 906 (Nev. 2002).

5

1  An ambiguity exists when a policy provision is subject to two or more reasonable
2  interpretations. *Grand Hotel Gift Shop v. Granite State Ins. Co.*, 839 P.2d 599, 604 (Nev. 1992).
3  In such case, the court should consider not only the language of the policy, but also the intent of
4  the parties, the subject matter of the policy, the circumstances surrounding the issuance of the
5  policy to effectuate the reasonable expectations of the insured. *Nat'l Union Fire Ins. Co. v.
6  Caesars Palace Hotel and Casino*, 792 P.2d 1129, 1130 (Nev. 1990). If these steps do not resolve
7  the ambiguity, the contract is to be construed against the insurer and in favor of the insured. *Estate
8  of Delmue v. Allstate Ins. Co.*, 936 P.2d 326, 328 (Nev. 1997). However, a court will neither
9  rewrite an otherwise unambiguous contract provision nor struggle to find ambiguity where none
10 exists. *United Nat'l*, 99 P.3d at 1157; *Farmers Ins. Group v. Stonik*, 867 P.2d 389, 391 (Nev.
11 1994).

**2. Clarendon's Policy Language**

13  Under its Policy, Clarendon is obligated to "pay those sums that an insured
14 becomes legally obligated to pay as damages for . . . property damage to which this insurance
15 applies." (Policy, Sec. I.A.1.a.) For coverage to apply, three conditions must be met:

16  b. This insurance applies to . . . property damage only if:
17  (1) The . . . property damage is caused by an occurrence that takes place in the
18      coverage territory; and
19  (2) The . . . property damage is caused by an occurrence which takes place
20      during the policy period whether such occurrence is known to the Insured;
21      and
22  (3) The . . . property damage resulting from such occurrence first takes place
23      during the policy period.

24 (Policy, Sec. I.A.1.b.). The Policy defines the terms "property damage" and "occurrence."
25 "Property damage means physical injury to tangible property, including all resulting loss of use of
26 that property. All such loss of use shall be deemed to occur at the time of the physical injury that

6

caused it." (Policy, Sec. V.14.)  "Occurrence means an accident, including continuous or repeated exposure to substantially the same general harm." (Policy, Sec. V.10.)

Further, the Policy contains a "deemer" provision that states: "All property damage . . . arising from, caused by or contributed by, or in consequence of an occurrence shall be deemed to take place at the time of the first such damage, even though the nature and extent of such damage or injury may change and even though the damage may be continuous, progressive, cumulative, changing or evolving, and even though the occurrence causing such . . . property damage may be continuous or repeated exposure to substantially the same general harm." (Policy, Sec. I.A.1.c.)

### 3. Clarendon's Duty to Indemnify

*A. Trigger of Coverage*

The Nevada Supreme Court has never squarely addressed the issue of which trigger of coverage theory should apply to third party insurance cases, as is the case here.  In fact, only one Nevada opinion, *Jackson v. State Farm Fire and Casualty Co.*, 835 P.2d 786 (Nev. 1992), has had opportunity to discuss two theories, the manifestation and the continuous exposure trigger theories, in the first party insurance context.  Under the continuous exposure theory, "the loss is apportioned between those insurers whose policies insured the risk during the period from the date when the damage first occurred to the date of its discovery by the insured." *Id*. at 788 (internal quotations omitted).  On the contrary, the manifestation theory directs liability only toward "the carrier whose policy was effective when the progressive damage became manifest." *Id*.

In *Jackson*, the court held that the manifestation theory applied to first party insurance cases involving progressive property damage. *Jackson*, 835 P.2d at 509.  In so holding, it explicitly distinguished third party cases by emphasizing that application of the manifestation theory to first party coverage serves two goals: first, it comports with the reasonable expectations of a first party insured to seek coverage for property loss that arises during his or her present policy; and second, it promotes certainty within the insurance industry by allowing insurers to

7

1  more accurately gauge insurance premiums, thereby reducing costs to consumers. *Jackson*, 835
2  P.2d at 789.
3        Plaintiff urges the Court to apply an inverse holding of *Jackson* to the present case.
4  Plaintiff's argument is two-fold.  First, Plaintiff argues that because the *Jackson* court explicitly
5  distinguished third party liability policies in its holding, application of the continuous exposure
6  theory to liability policies is not contrary to Nevada law.  Second, Plaintiff argues that the Policy
7  language is ambiguous and that the application of the continuous exposure theory is needed to
8  meet the reasonable expectations of the insured.  To create ambiguity, Plaintiff submits conflicting
9  testimony of two of Defendants' experts, one interpreting the Policy under the manifestation
10 theory and the other under the continuous exposure theory.  Plaintiff's argument follows that the
11 reasonable expectations of the insured are met by an adoption of the continuous exposure theory
12 because Nevada's local insurance industry standard, as testified to by Defendants' own expert, is
13 to handle claims on a cost allocation basis.
14       Here, the Court need not speculate what trigger theory–the manifestation,
15 continuous exposure, or otherwise–the Nevada Supreme Court might adopt in liability policies or
16 look to local industry practices because it finds that the Policy language unambiguously sets forth
17 the requirements needed to effectuate coverage.  Specifically, the Policy requires both the
18 "property damage" and an "occurrence" giving rise to the property damage to occur within the
19 Policy period.  In addition, the Policy explicitly contracts out of the continuous exposure theory by
20 way of the "deemer" provision, wherein Clarendon avoids liability for property damage arising
21 prior to the inception of, but continuing into, its Policy term.
22       Thus, to determine whether Clarendon had a duty to indemnify Plaintiff for liability
23 related to the Underlying Action, the Court must determine whether both the "occurrence" and the
24 first instance of "property damage" in each individual home took place during the relevant dates of
25 the Policy.  Here, the Court finds that a genuine issue of material fact exists as to when the
26

occurrence and property damage occurred. Therefore, summary judgment on Count One is denied as to both Parties.

### B. "Occurrence"

As previously stated, Clarendon's duty to indemnify is triggered, in part, by an occurrence that takes place within the Policy period: "This insurance applies to . . . property damage only if . . . [t]he property damage is caused by an occurrence which takes place during the policy period." (Policy, Sec.I.A.1.b.(2).) Under the Policy, "[o]ccurrence means an *accident*, including continuous or repeated exposure to substantially the same general harm." (Policy, Sec. V.10) (emphasis added). The Policy does not define the term "accident," and the Court must therefore apply its plain and ordinary meaning. *McDaniel*, 53 P.3d at 906.

The Nevada Supreme Court has already given meaning to the term "accident" when left undefined in an insurance policy. In a case interpreting similar "occurrence" language at issue in the present case, the Court defined "accident" as "a happening that is not expected, foreseen, or intended." *Beckwith v. State Farm Fire and Cas. Co.*, 83 P.3d 275, 277 (2004) (*citing Webster's New World Dictionary* 8 (3d ed. 1999)). Here, the only act giving rise to the possibility of coverage under the Policy is the water intrusion.

The Court finds that water intrusion is a "happening that is not expected, foreseen, or intended" and thus falls within the definition of "occurrence." Certainly, neither the Plaintiff nor the homeowners intended to have water intrude into the 20 homes. Nor can it be said that either the Plaintiff or the homeowners expected or foresaw the water intrusion. Likewise, the Parties agree that water intrusion is the only potential basis for coverage.

Thus, for Clarendon to have a duty to indemnify under the Policy, Plaintiff must demonstrate that the water intrusion first occurred during the Policy period. To this end, the Parties dispute the proper standard under which to evaluate the first occurrence. Defendants argue that because the Underlying Action is a class action lawsuit, the first occurrence arises at the onset of the first instance of water intrusion as to any of the 53 class action homes. Defendants'

argument follows that because the lead plaintiff in the Underlying Action alleged property damage prior to the inception of the Policy, no possibility of coverage exists.

Alternatively, Plaintiff asserts that water intrusion must be determined on an individual, home-by-home basis. The Court agrees. First, the Policy does not contain language to support Defendants' interpretation. To support their interpretation, Defendants rely on the Policy's "deemer" provision. However, this provision does not discuss first occurrence, but speaks only of property damage: "All property damage . . . shall be deemed to take place at the time of the first such *damage*." (Policy, Sec. I.A.1.c.) (emphasis added.)

Second, class certification is merely a procedural technique employed by courts to aid in the efficiency of litigation when certain numerosity, commonality, typicality and adequacy of representation requirements of the plaintiffs are met. Nev. R. Civ. P. 23. Certification of a class does not require that all questions of law or fact be identical and thus issues of fact may nevertheless exist among class members. *Shuette v. Beazer Homes Holding Corp.*, 124 P.3d 530, 538 (Nev. 2005). Here, because factual issues among class members regarding coverage under the Policy exist, the Court finds that coverage for the 20 homes must be individually inspected for the existence of water intrusion. Applying these principles, the Court finds that genuine issues of material fact exist as to (1) the existence of water intrusion in each of the 20 homes, and (2) the date on which the water intrusion occurred.

With respect to the existence of water intrusion, the Court has already concluded that an evaluation must be individually performed on each home. That has not been done. Further, the evidence of water intrusion that does exist is insufficient to conclusively establish water intrusion in all 20 homes at issue in this litigation. The water tests performed on the random sampling of the 53 homes only shows water intrusion as to those homes tested. Further, the Court does not know whether any of the homes tested include those at issue in this litigation.

Regarding the date of the occurrence, Plaintiff never demonstrates that the water intrusion actually occurred between the dates of February 19, 2000 and February 19, 2001, the

relevant dates of the Policy. Plaintiff offers evidence to indicate the possibility of an occurrence within the Policy term, but fails to offer proof to conclusively establish that the water intrusion during the dates mentioned. For example, Plaintiff states that "[Defendants] had rainfall data indicating rain [in] the Las Vegas area substantial enough to cause such staining." (Pl.'s Mot. Summ. J., 18.) Not only does Plaintiff fail to support its argument with factual evidence, but also fails to demonstrate that this was the only instance of rainfall that could have caused the property damage. Simply put, Plaintiff fails to connect the dots to conclusively show that the rainfall that fell during the Policy period caused the water intrusion during the Policy term. Viewing the evidence in favor of the non-moving party, the Court finds that Plaintiff failed to meet its evidentiary burden and summary judgment as to Count One is denied.

The Court now turns to Defendants' Motion for Summary Judgment as to Count One, seeking summary judgment that Clarendon had no duty to indemnify under the Policy. As outlined above, Plaintiff has failed to meet its evidentiary burden of showing that no genuine issue of fact exists as to water intrusion in each of the 20 homes. Likewise, Defendants have failed to meet their evidentiary burden of proving that there is no possibility of coverage under the Policy.

Many indications lend support for the possibility of an occurrence under the Policy, thereby giving rise to potential coverage. First, the random testing of the homes, which showed water intrusion in all homes tested, leads to the possibility of water intrusion in all 20 homes. Second, rainfall data could indicate that the water intrusion occurred during Defendants' Policy. As a result of the possibility of coverage of the 20 homes, Defendants' Motion for Summary Judgment as to Count One is denied.

*C. "Property Damage"*

Like an occurrence, property damage must also arise during the Policy period for coverage to be triggered: "This insurance applies to . . . property damage only if . . . [t]he property damage resulting from such occurrence first takes place during the policy period." (Policy, Sec. I.A.1.b.(3).) In addition, the "deemer" provision further clarifies that the Policy does not provide

1  coverage for property damage arising prior to the inception of, but continuing into, the Policy
2  period: "All property damage . . . arising from, caused by or contributed by, or in consequence of
3  an occurrence shall be deemed to take place at the time of the first such damage." (Policy, Sec.
4  I.A.1.c.)
5        Because the Court already found that neither Party has met its burden of
6  demonstrating that the occurrence giving rise to the property damage, *i.e.*, the water intrusion, did
7  or did not occur within the Policy period, the Court need not address the issue of property damage.
8  However, the Court notes that for coverage to apply, each individual home must be evaluated for
9  property damage and the property damage must have been caused by the occurrence.

**III. Count Two: Declaratory Relief–Waiver and Estoppel**

11        Plaintiff seeks summary judgment on Count Two, which requests declaratory
12  judgment on the issue of waiver and estoppel.  Specifically, Plaintiff's Amended Complaint states,
13  "Gary Day desires a judicial determination of whether defendants, by virtue of their actions and
14  inactions, have waived any and all defenses to Gary Day's insurance coverage claims other than
15  that as set forth in its declination of April 14 [sic], 2004 and that Clarendon be foreclosed from
16  pursuing discovery in this action that would be intended to reveal, establish or support any such
17  defenses." (¶ 31.)  Plaintiff further asks the "Court to declare that any and all policy defenses
18  Clarendon my otherwise have had, other than those as set forth in its April 14 [sic], 2004
19  correspondence, be and the same are waived and/or that defendants be estopped to assert the
20  same." (¶ 33.)
21        In short, Plaintiff's Amended Complaint seeks to estop Defendants from asserting
22  any additional Policy defenses in denying coverage to Plaintiffs and conducting additional
23  discovery on those defenses.  However, in its Motion for Summary Judgment, Plaintiff requests
24  relief beyond that requested in its Amended Complaint.  There, Plaintiff seeks "partial summary
25  judgment declaring that defendants have no right, at this juncture, to question the amounts paid by
26  Gary Day in its settlement of [the Underlying Action]" and for "declaratory relief premised with a

12

AO 72
(Rev. 8/82)

1  finding that defendants have waived any rights they may have otherwise had under the policy . . .
2  to limit indemnity exposure for less than the amount of the Gary Day settlement in the [Underlying
3  Action]." (Pl.'s Mot. Summ. J., 29.)
4        The Court limits its decision on the issue of waiver and estoppel to those raised in
5  the Amended Complaint.  Therefore, the Court will not determine whether waiver and/or estoppel
6  applies to the issue of the nature and extent of monetary damages Plaintiff paid in its settlement.
7  For the following reasons, the Court denies summary judgment on Count Two as to both Parties.
8        *A. Waiver*
9        Under Nevada law, a "waiver is an intentional relinquishment of a known right.  In
10  order to be effective, a waiver must occur with full knowledge of all material facts." *Thompson v.*
11  *City of North Las Vegas*, 833 P.2d 1132, 1134 (Nev. 1992).  Under this standard, Plaintiff argues
12  that "defendants had options other than to issue a declination of coverage," such as filing a
13  declaratory judgment action, picking up the defense of the case and deposing the homeowners, or
14  inspecting the homes. (Pl.'s Mot. Summ. J., 25.)  Because of these options, Plaintiff argues that
15  Defendants waived their rights to raise any additional policy defenses in denying coverage.
16        The Court finds that Defendants have not waived any rights because its April 15,
17  2004 letter explicitly contained a reservation of rights.  Specifically, Defendants stated: "The
18  coverage analysis outlined herein is not intended to be exhaustive.  The policy contains additional
19  provisions which may have a bearing on the question of coverage.  By limiting the policy citations
20  referred to in this letter, *no other policy provisions are waived*." (Def.'s Mot. Summ. J., Exh. DD)
21  (emphasis added).  The addition of this language in its denial letter expressly negates any
22  intentional relinquishment of rights by Defendants.
23        On the issue of waiver, the Court denies summary judgment as to Plaintiff.
24  / /
25  / /
26  / /

AO 72
(Rev. 8/82)

*B. Equitable Estoppel*

Nevada's requirements for equitable estoppel are as follows: (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting estoppel must be ignorant of the true state of facts; and (4) he must have relied to his detriment on the conduct of the party to be estopped. *Cheqer, Inc. v. Painters and Decorators Joint Comm., Inc.*, 655 P.2d 996 (Nev. 1982).

Here, the Court finds that the elements of equitable estoppel are not met because it finds that Plaintiff cannot be said to have detrimentally relied on Defendants' bases for denying coverage. Defendants have already denied coverage and Plaintiff has relied on Defendants' denial. Should Defendants assert a new basis for declination of coverage, Plaintiff is still left in the same position, namely with no coverage. Further, due to the reservation of rights in Defendants' April 15, 2004, denial letter, Plaintiff has been on notice that additional policy defenses may be raised. For these reasons, Defendants are not estopped from asserting new or additional policy defenses. The Court therefore denies summary judgment as to Plaintiff.

With respect to Defendants, Defendants have failed to argue the issues of waiver and estoppel in their Motion for Summary Judgment. Consequently, Defendants have failed to meet their burden and summary judgment is therefore denied as to Defendants.

Accordingly, summary judgment on Count Two is denied as to both Parties.

**IV. Count Three: Breach of Contract**

Count Three of the Amended Complaint asserts a breach of contract for both a duty to defend and duty to indemnify. Regarding the breach of contract for duty to indemnify, the Court refers to its discussion, *supra*, in Section II of this Order. Because it finds that genuine issues of material fact exist as to coverage, the Court denies summary judgment as to the duty to indemnify under Count Three as to both Parties. The Court now turns to the duty to defend.

An insurer's duty to defend is broader than its duty to indemnify. *United Nat'l Ins. Co. v.*

1  *Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1158 (Nev. 2004).  The duty arises when the allegations of
2  the complaint and the facts known to the insurer indicate a potential for coverage.  *Id.* (citations
3  omitted).  Any doubts regarding the duty to defend must be resolved in favor of the insured.  *Id.*
4  (citations omitted).
5        As a preliminary matter, the Court finds that Plaintiff did tender defense of the
6  Underlying Action to Defendants, as evidenced through Defendants' acknowledgment of
7  Plaintiff's tender.  Defendants state in their motion that "Helm *re*-tendered Gary Day's defense and
8  indemnity to [CCC]."  (Def.' Mot. Summ. J., 3) (emphasis added.)  Further support of Defendants'
9  acknowledgment of Plaintiff's tender is found in the various correspondence submitted by
10 Defendants, such as the letter from NARS to Attorney Helm that stated, "I see you tendered
11 defence [sic] back on 4/16/01." (Def.' Mot. Summ. J., Exh. L.)
12       Here, neither Party submits argument or evidence demonstrating a duty to defend.
13 Plaintiff did not discuss the duty to defend in its brief, and Defendant merely concludes that
14 Plaintiff was defended in the Underlying Action by Federated and "therefore, it cannot be said that
15 Gary Day was left without a defense or that Clarendon violated any conceivable duty that it may
16 have had to defend Gary Day." (Def. Mot. Summ. J., 6.)  Without providing additional
17 explanation as to why Clarendon did not have a duty to defend, Defendants fail to meet their
18 summary judgment burden to conclusively establish that the duty to defend was not triggered.
19       For these reasons, summary judgment as to Count Three is denied as to both
20 Parties.
21 **V. Count Four: Statutory Relief under Nev. R. Stat. § 686A.310**
22       Plaintiff alleges a failure to acknowledge or respond to correspondence from
23 Defendant's counsel as its basis for asserting a violation of Nev. Rev. Stat. § 686A.310(b), (n).
24 The statute states in relevant part as follows:
25       1. Engaging in any of the following activities is considered to be an unfair practice:
26

15

1    (b)    Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

(n)    Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of his claim or for an offer to settle or compromise his claim.

2. In addition to any rights or remedies available to the commissioner, an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice.

Nev. Rev. Stat. § 686A.310.

In support of its allegations that Defendants violated this unfair practices statute, Plaintiff admits two letters, dated August 12, 2004, and September 21, 2004, that were not responded to or acknowledged by Defendants. Specifically, Plaintiff asserts that its letters "request[ed] reconsideration of the declination of coverage as expressed in Mr. Goates letter of April 15, 2004." (Pl.'s Mot. Summ. J., 7.) Further, Plaintiff admits the affidavit of Attorney Craig Hoppe, which affirms that these letters were neither acknowledged nor answered by Clarendon.

Defendants counter by asserting that "neither letter asked for an acknowledgment or response." (Def.'s Opp., 4.) The Court agrees and finds that neither letter constituted a request for reconsideration of coverage. The August letter merely informed Clarendon that Plaintiff settled the Underlying Action for $185,000 and attributed $70,000 as Defendants' share of the payment. Further, the letter states that "[Plaintiff's attorney] will thereafter be forwarding correspondence to you demanding that Clarendon indemnify Gary Day Construction and pay its attorneys' fees necessitated by virtue of your declination letters." (Def.'s Opp., Exh. A.) Not only was no response requested, but there was no basis on which to respond. The Court further finds that it was reasonable for Defendants to not have acknowledged the letter given Plaintiff's promise that it would follow-up with additional correspondence.

16

1    Likewise, the September letter required no response or acknowledgment. Rather,
2 this letter constituted "an offer to settle a disputed claim" (id.) and not a request for
3 reconsideration. In the letter, Plaintiff offered, "if Clarendon accepts this last tender and offer to
4 settle on or before close of business October 29, 2004, by written notification to the undersigned
5 counsel of such acceptance, this offer shall be deemed withdrawn and shall be of no further force
6 and effect." (Id.) Defendants "responded" by simply choosing not to accept Plaintiff's offer. As a
7 result, the Court finds that § 686A.310(1)(b) has not been violated.
8    The Court also finds that § 686A310(1)(n) has not been violated. In their
9 reservation of rights letters and denial letter, Defendants thoroughly set forth their bases for
10 denying coverage by analyzing the facts giving rise to Plaintiff's claim, the applicable Policy
11 provisions, and current law.
12    For these reasons, the Court denies summary judgment on Count Four as to
13 Plaintiff. On the other hand, because the Court finds that Defendants were under no obligation to
14 acknowledge or respond to Plaintiff's letters, and because Defendants promptly and reasonably
15 provided Plaintiff with a full explanation of their bases for denial of coverage, summary judgment
16 is hereby entered on Count Four in favor of Defendants.

**VI. Count V: Breach of Duty of Fair Dealing and Good Faith**

18    An insurer acts in bad faith and breaches the covenant of good faith and fair dealing
19 that exists in every contract when it refuses, without proper cause, to compensate insured for a loss
20 covered by the policy. *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993). Under
21 Nevada law, "the focus of common law bad faith, and indeed the conduct for which liability is
22 imposed, [is] on an unreasonable *denial* of the benefits of the policy." *Hart v. Prudential Prop.*
23 *and Cas. Ins. Co.*, 848 F. Supp. 900, 904 (D. Nev. 1994) (emphasis in original). Thus, "a bad faith
24 tort action does not occur until after the first case for benefits under the contract has been settled."
25 *Martin v. State Farm Mut. Auto. Ins. Co.*, 960 F.Supp. 233, 237 (D. Nev. 1997) (*citing Pulley v.*
26 *Preferred Risk Mut. Ins. Co.*, 897 P.2d 1101, 1103 (Nev. 1995).

Because there has been no determination of coverage in the Underlying Action, an entry of summary judgment on Plaintiff's claim is premature. Therefore, summary judgment as to Count Five is denied as to both Parties.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment (#80); and Plaintiff's Countermotion for Summary Judgment (#85) are DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (#81) is GRANTED in part and DENIED in part as follows: summary judgment on Count Four is hereby granted in favor of Defendants; summary judgment on all other Counts is denied.

Dated: October 26, 2006.

_____
**ROGER L. HUNT**
**United States District Judge**